**SO ORDERED.**

**SIGNED this 17 day of January, 2007.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                            CASE NO.

PEGGY D. WILLIAMS                                                 06-00141-5-ATS

    DEBTOR


### ORDER REGARDING OBJECTION TO CLAIM

The matter before the court is the debtor's objection to the claim filed by Carolina Building Systems, Inc. ("CBSI"), Claim No. 18. A hearing took place in Raleigh, North Carolina on January 9, 2007.

Peggy D. Williams filed a petition for relief under chapter 11 of the Bankruptcy Code on February 6, 2006, and her plan of reorganization was confirmed on September 29, 2006. Ms. Williams scheduled CBSI as an unsecured creditor with a disputed claim in an unknown amount. On May 4, 2006, CBSI filed its unsecured proof of claim in the amount of $196,203.98, consisting of a claim for goods sold and services performed in the amount of $170,612.16 plus $25,591.82 in attorney's fees.

On May 25, 2004, Ms. Williams and CBSI entered a Design/Build Contract Agreement in which Ms. Williams engaged CBSI to construct a "Pre-engineered wood post frame building system shell." Debtor Ex. 1. The contract price was $450,000, and the parties entered one written change order in the amount of $29,647. Debtor Ex. 3. Ms. Williams paid a $5,000 deposit invoiced on June 1, 2004, and made progress payments in the amounts of $100,000 invoiced in June 18, 2004, $50,000 invoiced on July 8, 2004, $90,000 invoiced on July 28, 2004, and $100,000 invoiced on September 24, 2004. Debtor Ex. 4. CBSI issued another invoice in the amount of $100,000, Invoice No. 966, dated November 2, 2004, and a final invoice in the amount of $55,350, Invoice No. 999, dated January 19, 2005, neither of which has been paid by Ms. Williams. Debtor Ex. 5. Invoice No. 999 reflected the written change order as well as certain other items that were added to the contract and a credit back to Ms. Williams for an unused door. CBSI filed its claim to collect the balance owing on the two unpaid invoices, plus interest at the rate of 1.5 percent, and attorney's fees.

Ms. Williams' objection states that CBSI failed to complete the construction of the building and that the work was not completed in a workmanlike manner. Specifically, she testified that there were no HVAC units installed, pickets were not constructed, the roof leaked and there is standing water. Ms. Williams acknowledged that the additional items in Invoice No. 999 should be paid, but she believed there were

additional unused items (doors and windows) for which she should be given credit.  Ms. Williams also testified that she paid $166,390.16 to have certain items completed by other contractors due to the shortcomings of CBSI, including some of the subcontractors used by CBSI to construct the building.  Though Ms. Williams was never clear as to the amount she believed she owed CBSI, ultimately she admitted that she owed the $55,350 on Invoice No. 999 but not the remaining $100,000 balance reflected on Invoice No. 966.

Dale Sparks, president of CBSI, testified that Ms. Williams had never expressed dissatisfaction with the building until he aggressively pursued collection of the balance due by filing a lawsuit.  Some time before the lawsuit was filed, Ms. Williams did call about the leaking roof, and Mr. Sparks sent his business associate, George Griffin, to repair it.  Ms. Williams would not let Mr. Griffin into the building to inspect the leak because he did not have an appointment, and no further attempts were made to repair the roof.  Otherwise Mr. Sparks believed Ms. Williams was happy with the construction.  Several of the subcontractors also testified that Ms. Williams had expressed only satisfaction with the project.  No complaints were ever made in writing.

With respect to the specific items cited by Ms. Williams, it is clear that the contract excludes installation of HVAC units.  The reference to HVAC is for electrical wiring to support two HVAC units,

3

which was completed.  The contract shows and Mr. Sparks testified that the project was only to construct a "building shell," and not a finished building.  This is bolstered by Mr. Sparks' testimony that another proposal was drafted for a completed building, for a total purchase price of $800,000, but that contract was not executed. CBSI Ex. 8.  Accordingly, the court finds that HVAC units were not required by the contract, and that part of the contract was performed as agreed.

   Ms. Williams also testified that pickets were to be installed in front of the building.  Mr. Sparks testified that the drawings related to the contract do not show pickets, and that a drawing reflecting the pickets was made separately.  The only drawings provided to the court do show pickets (Debtor Ex. 2), and absent any evidence to the contrary, the court finds that those drawings are the drawings incorporated into the contract.  Accordingly, pickets are required by the contract.

   The contract does require the work to be completed in a workmanlike manner, and the work is guaranteed for 2 years.  The roof is apparently still leaking, and it must be repaired.

   Ms. Williams questioned the value of the door for which she was given credit, and she believes that there are two additional doors and four windows for which she should be given credit.  She did not know the value of any of these items.  Mr. Sparks testified that the value of the door was $700, as reflected in Invoice No. 999.  He also

testified that while the invoices may not reflect any other items not used, Ms. Williams was given many additional items for which she was not charged.  The other subcontractors also testified that they provided her with goods and services for which she was not charged.  Absent any credible evidence to the contrary, the court finds that the credit of $700 is the proper credit on Invoice No. 999, and that the invoiced amount of $55,350 is correct.

Based on the foregoing, the court concludes that Ms. Williams does owe CBSI the balances shown on Invoice Nos. 966 and 999; provided, however, that CBSI must repair the roof and install the pickets.

The outstanding balance on the invoices totals $155,350.  The proof of claim shows a balance due of $170,612.16.  Mr. Sparks testified that the difference of $15,262.16 is attributable to interest at 1.5 percent through June 3, 2005.  Paragraph 10 of the Terms and Conditions of the Design/Build Contract provides

> Payments for labor, material, and equipment furnished on the job each month will be invoiced at different stages of the job in accordance with Article 5 of the Proposal - Contract Agreement and payment shall be due upon invoicing.  A service charge of 1 1/2% per month will be charged on late payment plus costs incidental to collection, including reasonable attorney's fees.  It is understood that failure to comply with payment terms will be grounds for stopping work progress.  Final payment shall be invoiced upon substantial completion and due upon occupancy or not later than ten days after final inspection by the building inspector.

Debtor Ex. 1 at 7.

It is not clear to the court how the mathematical calculation was made by CBSI to arrive at $15,262.16.  The court will allow a 1.5 percent "service charge" as part of the claim, but CBSI must provide to the court the specifics of its calculation of the service charge due before that component of its claim will be allowed.

The remainder of the claim is for attorney's fees in the amount of $25,591.82.  This amount is 15 percent of the total claim of $170,612.16 (contract balance plus the claimed interest of $15,262.16), which CBSI contends is per se a reasonable fee pursuant to North Carolina General Statute § 6-21.2.  Ms. Williams questions whether the fees sought are reasonable.  She also contends that there is no documentation to show whether some of the requested fees are for services rendered postpetition. Ms. Williams maintains that the fees seem high for the prepetition litigation, given that the only documents of record are a demand letter, a complaint, and an answer and counterclaim, after which the bankruptcy petition was filed.

North Carolina General Statute § 6-21.2 is the first hurdle for determining whether a contractual provision for attorney's fees is enforceable.  It reads, in relevant part,

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:

6

>(1) If such note, conditional sale contract or other evidence of indebtedness provides for attorneys' fees in some specific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent (15%) of said "outstanding balance" owing on said note, contract or other evidence of indebtedness.
>
>(2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.
>
> * * *
>
>(5) The holder of . . . a note and chattel mortgage or other security agreement . . . or his attorney at law, shall, after maturity of the obligation by default or otherwise, notify the . . . party sought to be held on said obligation that the provisions relative to payment of attorneys' fees in addition to the "outstanding balance" shall be enforced and that such . . . party sought to be held on said obligation has five days from the mailing of such notice to pay the "outstanding balance" without the attorneys' fees. If such party shall pay the "outstanding balance" in full before the expiration of such time, then the obligation to pay the attorneys' fees shall be void, and no court shall enforce such provisions . . . .

N.C. Gen. Stat. § 6-21.2.

Though § 6-21.2(2) appears to say that 15 percent is per se reasonable, the case law differs. In <u>Institution Food House, Inc. v. Circus Hall of Cream</u>, 107 N.C. App. 552, 558, 421 S.E.2d 370, 374 (1992), the court stated, "We first note that reasonableness is the key factor under all attorney's fees statutes." (Citations omitted). Similarly, the court of appeals remanded 15 percent attorney's fees awards for a determination of reasonableness in <u>Jennings Communication</u>

7

Corp. v. PCG of the Golden Strand, Inc., 126 N.C. App. 637 (1997), and West End III Ltd. Partners v. Lamb, 102 N.C. App. 458, 402 S.E. 2d 472 (1991).  Thus, the North Carolina statute cannot be read to dictate that 15 percent of the outstanding balance is per se reasonable.

In this case, it is not possible for the court to determine whether the requested fees are reasonable without more information, including a summary of the work performed, the time spent, the attorney's hourly rate, and the total fees actually charged to CBSI. Accordingly, CBSI may file materials in support of its claim for attorney's fees within 15 days of the date of this order, after which the court will make a determination as to whether the requested fees are reasonable.

Based on the foregoing, the objection to claim is **DENIED** with respect to the contract balance of $155,350, subject to CBSI's obligation to repair the building's roof and to install the pickets. The objection to claim is held open with respect to the attorney's fees and the amount of the service fee pending submission of further documentation from CBSI.

**SO ORDERED.**

**END OF DOCUMENT**